IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRYANT DAVIS, | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Civil Action No. 08-589 |
| | ) | Magistrate Judge Amy Reynolds Hay |
| HARRY WILSON, Superintendent; | ) | |
| KERRI CROSS, Hearing Examiner; | ) | |
| TAMMY CESARINO-MARTIN; | ) | |
| MICHEAL HOWARD, Inmate Employment; | ) | |
| PAUL YETTER, Unit Manager; CARL | ) | |
| WALKER, Unit Manager; SGT PIERCE, | ) | |
| C.O. II; LT. NOSE, C.O. III; ZAMPATTI, | ) | |
| C.O. I; JAMES RISBIN, C.O. 1; and | ) | |
| TIMOTHY I. MARK, Chief Hearing Examiner, | ) | |
| Defendants | ) | RE: Dkt [21] |

## MEMORANDUM ORDER AND OPINION

HAY, Magistrate Judge

Bryant Davis ("Plaintiff") was, at the time of initiating this Section 1983 action, and

continues to be, a Pennsylvania state prisoner. He named eleven Pennsylvania Department of

Corrections Employees as defendants, all of whom were somehow involved in his being charged

with the disciplinary infraction of possessing so-called "jail-house wine" in his prison cell. As a

consequence of his being charged with the disciplinary infraction, he was sanctioned to serve 75

days in disciplinary confinement. Plaintiff's primary complaint is that he was denied procedural

due process by the imposition of the 75 days of disciplinary custody when he was denied the

right to call his cell mate as a witness in the disciplinary hearing. Plaintiff contends that his cell

mate did confess and at the hearing would have confessed to being the one who created and

possessed the wine. Because being housed in disciplinary confinement for a mere 75 days does

not implicate a state created liberty interest, Plaintiff's procedural due process claim fails as a matter of law.

**Relevant Procedural and Factual  History**

At the time of initiating this suit, Plaintiff was and continues to be a prisoner at SCI-Fayette.  Plaintiff filed a motion for leave to proceed in forma pauperis (IFP), Dkt. [2], which was granted.   Dkt. [3].  The operative complaint is Dkt. [4].  In that complaint, he named eleven Defendants all of whom were somehow involved in his being sanctioned with 75 days of disciplinary confinement.   His complaint alleged a cause of action against the Defendants for a violation of his Fourteenth Amendment procedural, and possibly substantive due process rights, as well as his Equal Protection rights and Fifth and Eighth Amendment rights.  Plaintiff appended to the complaint copies of the disciplinary hearing decision and the appeals and decisions of appeals.

The following allegations from the complaint are taken as true for the purposes of deciding this motion.  On January 3, 2008, Plaintiff and Anwar Woods were cell mates and had been for less than two weeks.  Dkt. [31] at 8.  On that day, Defendants Correction Officers Zampatti and Risbin conducted a search of the cell and discovered jail house wine located in Woods' cabinet.  The two Defendants asked whose wine it was and Woods is alleged to have claimed it as his.  At that time, Defendants Block Sergeant Pierce, Unit Manager Walker and Lieutenant Nose were called to the cell when Woods again was alleged to have claimed ownership of the wine.  Nevertheless, Plaintiff was issue a misconduct accusing him of possessing contraband, namely the wine.

On January 10, 2008, a misconduct hearing was conducted, at which Plaintiff requested

as a witness, Woods.  Defendant Cross, the hearing examiner, denied the request.  At the hearing,

Defendant Zampatti testified that Plaintiff claimed responsibility for the wine.  Plaintiff now

contends that this was false testimony and Plaintiff denies claiming responsibility for the wine.

Defendant Kerri Cross believed the testimony of Defendant Zampatti and found Plaintiff guilty

of the misconduct.

Defendants Cesarino-Martin, Howard and Yetter were the members of the Program

Review Committee ("PRC"), which heard Plaintiff's appeal of the misconduct but affirmed the

finding of guilt and the sanction of 75 days of disciplinary custody.  Plaintiff then appealed from

the PRC to Defendant Superintendent Wilson, who likewise affirmed the finding of guilt and the

sanction.  Finally, Plaintiff appealed to Defendant Chief Hearing Examiner Mark, who also

affirmed.

The complaint alleged that the Defendants denied Plaintiff procedural and apparently,

substantive due process, the equal protection of the laws and violated his Eighth Amendment

rights and furthermore, that the defendants conspired to do so.

All eleven Defendants (collectively, "the Defendants"), represented by the same counsel,

filed a motion to dismiss, Dkt. [21], and a brief in support thereof, Dkt. [22].  Attached to the

brief were copies of the disciplinary hearing decision and Plaintiff's appeals and the Defendants'

responses to Plaintiff's appeals.   The Court directed Plaintiff to file a response, Dkt. [24], and

after being granted an extension of time in which to do so, Plaintiff filed his response, Dkt. [31],

with evidentiary materials attached.

**Standard of Review**

As the United States Supreme Court recently held in <u>Bell Atlantic Corp. v. Twombly</u>, 127

S. Ct. 1955 (2007), a complaint may properly be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Under this standard, the court must, as a general rule, accept as true all factual allegations of the Complaint and all reasonable inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). Nevertheless, under the 12(b)(6) standard, a "court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended by, 275 F.3d 1187 (9th Cir. 2001). Nor must the Court accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 127 S. Ct. at 1965 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994). In addition, the Court of Appeals in Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004), held that " defendant may submit an indisputably authentic [document] to the court to be considered on a motion to dismiss[.]" Furthermore, because Plaintiff is pro se, courts accord an even more liberal reading of the complaint, employing less stringent standards when considering pro se pleadings than when

judging the work product of an attorney.  Haines v. Kerner, 404 U.S. 519 (1972).

The question to be resolved is: whether, taking the factual allegations of the complaint, which are not contradicted by the exhibits and matters of which judicial notice may be had, and taking all reasonable inferences to be drawn from those uncontradicted factual allegations of the complaint, are the "factual allegations . . . enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]" Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955,  1964-1965 (2007).  Or put another way,  a complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

**Discussion**

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must meet two threshold requirements.  He must make factual allegations enough to establish that: (1) the asserted misconduct was committed by a person acting under color of state law; and (2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds by, Daniels v. Williams, 474 U.S. 327, 330-331 (1986). Because Plaintiff's complaint fails to state a constitutional deprivation, his Section 1983 claims must be dismissed for failure to state a claim upon which relief can be granted.

**(a)      Eighth Amendment Claims**

Plaintiff alleges that the Defendants' actions violated his Eighth Amendment right to be free of cruel and unusual punishment.  The Eighth Amendment provides that  "cruel and unusual

punishments [shall not be] inflicted."   The Supreme Court has explained that analysis of a violation of the Eighth Amendment involves a two pronged inquiry: (1) an objective inquiry into the qualitative nature of the harm suffered by the victim of the alleged punishment and (2) a "subjective inquiry" into the mind of the person inflicting the harm.  See Wilson v. Seiter, 501 U.S. 294 (1991).  Accord  Sims v. Artuz, 230 F.3d 14, 21 (2d Cir. 2000) ("A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components–one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect.").  The Court of Appeals for the Third Circuit has explained the objective element as requiring proof that "the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections....  If not our inquiry is at an end."  Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000).  Only if the harm suffered is sufficiently serious does the court then turn to analyze the subjective element which the Third Circuit has described as determining whether the prison "officials acted with a sufficiently culpable state of mind.  In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain."  Id. (citations omitted).

Although the "objective component of a cruel-and-unusual punishment claim focuses on the harm done," Sims v. Artuz, 230 F.3d at 21, the Third Circuit Court has cautioned that "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny."  Fuentes v. Wagner, 206 F.3d at 344 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)) (internal quotes omitted). In determining whether a harm intended as punishment "was sufficiently serious to fall within the Eighth Amendment's zone of protections", Fuentes v. Wagner, 206 F.3d at 344, the Third Circuit Court of Appeals has described the inquiry

as whether the prisoner has been deprived of the "minimal civilized measure of life's necessities." Young v. Quinlan, 960 F.2d 351, 359 (3d Cir.1992), superseded by statute on other grounds as stated in, Ghana v. Holland, 226 F.3d 175, 184 (3d Cir. 2000).  Proving that one has been deprived of the minimal civilized measure of life's necessities requires proof that one has been denied "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety" from physical assault.  Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997). Accord Ward v. Oliver, No. 91 C 1468, 1992 WL 211055, at *2 (N.D. Ill. Aug. 27, 1992)("only those deprivations denying 'the minimal civilized measure of life's necessities,' are serious enough to implicate the Eighth Amendment.  The core areas protected by the Eighth Amendment are shelter, sanitation, food, personal safety, medical care, and clothing."), aff'd, 19 F.3d 1436 (7th Cir. 1994)(Table).

Here, Plaintiff has failed to allege the deprivation of any of life's necessities.  The only allegation made is that the mere imposition of the 75-day sanction of being in disciplinary custody is cruel and unusual punishment because Plaintiff is actually innocent of the charge. See, e.g., Dkt. [31] at 4 (the Defendants did "violate plaintiff's rights under the fourteenth amendment to due process and the eigth [sic] amendment againts [sic] cruel & unusual punishment by transferring plaintiff to punitive segregation in the absence of a violation to the rules of the institution.").  However, as made clear above, the Eighth Amendment's protection against cruel and unusual punishment for convicted prisoners requires that one be denied the basic necessities of life, such as food, shelter, clothing, medical care.  There is not one allegation contained in the complaint that comes remotely close to stating such a deprivation.  Accordingly, the Eighth Amendment claim is properly dismissed for failure to state a claim upon which relief

can be granted. "The [Eighth] amendment [in the context of challenging prison conditions] is violated **only** when an inmate is deprived of 'the minimal civilized measure of life's necessities.'" Young v. Quinlan, 960 F.2d at 359 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981))(emphasis added).

Essentially, Plaintiff's claim is that it is cruel and unusual punishment to inflict any punishment, no matter what the punishment may be, on one who is actually innocent of any offense or infraction. However, as analyzed above, it is not the Eighth Amendment that covers such a claim given that Plaintiff was not denied the minimal civilized measure of life's necessities. Rather than an Eighth Amendment claim, we find that Plaintiff's claim of being actually innocent of the disciplinary charge to be really a claim that he was denied substantive due process, i.e., that it is fundamentally unfair or conscience shocking that an innocent inmate should be made to suffer disciplinary custody for an infraction that he did not commit, a claim which we address below.

### (b)    Fourteenth Amendment Claims

The Defendants point out that merely sending Plaintiff to disciplinary custody for 75 days does not implicate a liberty interest, and therefore, under the Constitution, such a sanction does not, as a matter of law, involve the taking of any liberty interest. Most of Plaintiff's response fails to join this argument. Plaintiff does not directly address this argument until page 13 et seq., of his response. Dkt. [31] at 13 to 18. The Defendants are correct.

Conducting a procedural due process analysis involves a two step inquiry: the first question to be asked is whether the complaining party has a protected liberty or property interest within the contemplation of the Due Process clause and, if so, the second question to be asked is

whether the process afforded the complaining party comported with constitutional requirements. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).

A protected liberty interest may arise from one of two sources: (1) directly from the Fourteenth Amendment's due process clause itself or (2) from state law. Hewitt v. Helms, 459 U.S. 460, 466 (1983). There is no liberty interest created directly by the Fourteenth Amendment that prevents an inmate from being subjected to disciplinary confinement. See Sandin v. Conner, 515 U.S. 472, 484 (1995) ("Conner asserts, incorrectly, that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation"); Stephany v. Wagner, 835 F.2d 497, 499 (3d Cir. 1987)("the Due Process Clause does not give a prisoner a liberty interest in remaining in the general prison population").

Neither has Pennsylvania created a liberty interest in being free from disciplinary confinement. Addressing the issue of state created liberty interests, the United States Supreme Court in Sandin v. Conner, 515 U.S. at 484, held that a state government "may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

Placing Plaintiff in disciplinary confinement for 75 days does not impose such an atypical and significant hardship as a matter of law under the facts alleged in the operative complaint and so does not deprive him of any liberty interest. See e.g., Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) (confinement in administrative custody for fifteen months with only one hour of

exercise per day five days per week did not amount to an atypical and significant hardship and thus did not deprive prisoner of a liberty interest); Smith v. Luciani, No. Civ. A. 97-3037, 1998 WL 151803, at *5 (E.D. Pa. March 31, 1998) ("In this case, plaintiff was subjected to seven months disciplinary time, a period of time half of that implicated in Griffin. Therefore, punishment of seven months in administrative custody, does not present 'the type of atypical, significant deprivation [in the context of prison life] in which a state might conceivably create a liberty interest.' Sandin, 515 U.S. at 486 (1995)."), aff'd, 178 F.3d 1280 (3d Cir. 1999) (Table); Abney v. Walker, No. 2:06cv1248, 2007 WL 1454265, at *3 (W.D.Pa. May 17, 2007)(in granting the Defendants' motion to dismiss, the Court concluded as follows: "Here, Abney received a total of seventy five days of disciplinary detention as a result of the misconduct. Under the rule announced in Sandin, as applied in Griffin, this court must conclude Abney's disciplinary detention did not impose an atypical and significant hardship in relation to the ordinary incidents of his prison sentence sufficient to give rise to a protected liberty interest. Consequently, Abney was not entitled to any due process protections with respect to the issuance of his misconduct report or the procedures employed during his disciplinary hearing."). Having been deprived of no liberty interest, Plaintiff was not constitutionally entitled to any process. Hence, whatever "flaws" occurred in the disciplinary hearings, and/or appeals, Plaintiff was not denied his procedural due process rights because he possessed no such rights given that the result of the process did not deprive him of a liberty interest.

Plaintiff does attempt to argue that the denial of his witness at the disciplinary hearing and his consequent sanction of 75 days in disciplinary confinement did deprive him of a liberty interest, but the cases he cites in support of this argument are cases decided prior to Sandin, see,

e.g., Dkt. [31] at 8 to 9, and the helpfulness of those pre-<u>Sandin</u> cases in analyzing the question at hand is doubtful at best. <u>See</u>, <u>e.g.</u>, <u>Abney</u>, 2007 WL 1454265, at *2 n.2 ("Abney cites to several pre-*Sandin* cases in his response to the Motion to Dismiss. These cases were effectively overruled by *Sandin*."). At the very least, in light of the foregoing analysis, those cases do not persuade the court that Plaintiff's stay in disciplinary custody for 75 days deprived him of a liberty interest.

Plaintiff's other arguments are unpersuasive as well. Plaintiff attempts to point out that despite the Third Circuit Court's holding in <u>Griffin</u> is distinguishable from his case because during the 75 days in disciplinary custody, not only did he suffer the deprivations attendant to administrative custody that the prisoner-plaintiff in <u>Griffin</u> experienced, but Plaintiff experienced the additional deprivations of no telephone calls, no television or radio and no commissary. However, this argument is unpersuasive in light of <u>Young v. Beard</u>, 227 Fed.Appx. 138 (3d Cir. 2007). In <u>Young</u>, the prisoner plaintiff was sanctioned with an aggregate of 930 days of disciplinary confinement. The prisoner-plaintiff alleged his procedural due process rights were violated because, like Plaintiff herein, the disciplinary hearing officer denied a witness requested by the prisoner-plaintiff. The <u>Young</u> court held as follows:

> Next, Young argues that prison officials violated his Fourteenth Amendment due process rights at various stages of the disciplinary proceedings. He claims that the hearing examiner improperly denied his requests to present witnesses at the hearings, and he also challenges the sufficiency of the evidence supporting the hearing examiner's findings of guilt. Young presumes he is entitled to the procedural protections set forth in <u>Wolff v. McDonnell</u>, 418 U.S. 539,

563-67, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), which held that a prisoner facing

the deprivation of a constitutionally cognizable liberty interest following an

administrative hearing has a due process right to certain procedural protections,

including notice of the charges twenty-four hours prior to the hearing, an

opportunity to call witnesses and present documentary evidence, and a statement

of the grounds for disciplinary action. However, an inmate's procedural due

process rights are not triggered unless the prison "imposes atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life."

Mitchell v. Horn, 318 F.3d 523, 531 (3d Cir. 2003) (quoting Sandin v. Conner,

515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). We have held that

fifteen months in administrative custody in a Commonwealth prison does not

amount to a deprivation of a cognizable liberty interest, Griffin v. Vaughn, 112

F.3d 703, 708 (3d Cir.1997), and it appears from the policy statement attached to

the Commonwealth's summary judgment motion that the conditions in

disciplinary custody are not substantially different from those experienced by a

prisoner in administrative custody. See also Mitchell, 318 F.3d at 532, remanded

to 2005 WL 1060658 (E.D.Pa. May 5, 2005) (noting this similarity). Despite

having ample opportunity to do so, Young has failed to state facts or submit

evidence showing that he was subject to conditions in disciplinary confinement

that meet the Sandin standard. We therefore agree with the conclusion of the

Magistrate Judge, as stated in her Report and Recommendation of December 6,

2004, that Young has not shown a deprivation of a cognizable liberty interest.

12

In like manner, Plaintiff's allegations concerning the conditions of his brief 75-day stay (as compared to the 930 days in Young) in disciplinary custody with conditions not significantly different from those experienced in administrative custody simply fail to state a claim under procedural due process because those conditions are, as a matter of law, not atypical and significant within the contemplation of Sandin. Accordingly, Plaintiff's procedural due process claims fail to state a claim upon which relief can be granted.

This is so, even though for present purposes, we accept that Plaintiff was actually innocent of the charge. In other words, where the sanction imposed does not deprive the person of a state created liberty interest, i.e., impose atypical and significant hardship on a prisoner, then a prisoner is not deprived of a state created liberty interest or a federally created liberty interest, even if he is actually innocent of the charge. To put a finer point on it, merely being found guilty of a disciplinary charge for which the prisoner is actually innocent does not impose an atypical and significant hardship, rather it is only the sanction imposed as a consequence of the finding of guilt that determines whether the prisoner has been deprived of a state created liberty interest. See Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994)(where, based upon having "cocaine" in his cell, a prisoner was placed in punitive segregation, which State law had created a liberty interest in avoiding, but where the "cocaine" was later determined not to be cocaine, the Court held that "The fact that Ricker may have been innocent of the charges does not raise a due process issue. 'The [C]onstitution demands due process, not error-free decision-making.' McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir.1983)."); Holleman v. Director, NO. CIV A 9:07CV294, 2009 WL 175250, *5 (E.D.Tex. Jan. 23, 2009) ("Even if the hearing officer made an error in determining that Holleman was guilty, the Fifth Circuit has specifically stated that in the

context of prison disciplinary proceedings, the Constitution requires due process, not error-free decision-making. <u>McCrae v. Hankins</u>, 720 F.2d 863, 868 (5th Cir. 1983). Holleman has not shown that he was denied the process which he was due nor that any rights secured to him by the Constitution or laws of the United States were violated, and so his claim for federal habeas corpus relief is without merit."); <u>Wilson v. Brown</u>, No. C 05-3949, 2008 WL 1930637, at *1 (N.D.Cal., May 1, 2008) ("Plaintiff's claim that Defendant D. Keithly erroneously found Plaintiff guilty of violating prison rules also is not cognizable. The fact that a prisoner may have been innocent of the charges does not raise a constitutional issue because the Constitution demands due process, not error-free decision-making.").

Notwithstanding the foregoing, Plaintiff appears to complain that he was denied due process because the Defendants failed to obey state law providing that certain procedures be complied with when a prisoner is placed in disciplinary custody. Dkt [31] at 7 ("Defendants . . . violated or did not adhere to it's own written policy & procedures regarding the process of misconduct appeals."). However, because Plaintiff's 75-day stay in the disciplinary confinement implicated no liberty interest, the state law procedures attendant to placement therein likewise implicated no liberty interest. <u>See</u>, <u>e.g.</u>, <u>Preston v. Hughes</u>, 178 F.3d 1295, 1999 WL 107970, *1 (6th Cir. 1999)(unpublished opinion)("Because Preston has no substantive liberty interest in parole, he cannot challenge procedures used to deny him parole. <u>See</u> <u>Olim v. Wakinekona</u>, 461 U.S. 238, 250 (1983)"); <u>McGrath v. Johnson</u>, 67 F.Supp.2d 499, 515 n.12 (E.D. Pa. 1999)(the "prisoner cannot contest the unconstitutionality of procedural devices attendant to parole decision because [the] prisoner had no liberty interest in obtaining parole under Pennsylvania law."). The Supreme Court has observed that "[a] liberty interest is of course a substantive [in contrast to a

14

procedural] interest of an individual; it cannot be the right to demand needless formality. Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement. . . . The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right." Olim v. Wakinekona, 461 U.S. 238, 250-51 (1983)(internal quotations, citations and footnotes omitted). See also United States v. Jiles, 658 F.2d 194, 200 (3d Cir. 1981)("The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension.")(quoting Slotnick v. Staviskey, 560 F.2d 31, 34 (1st Cir. 1977)); Shango v. Jurich, 681 F.2d 1091, 1101-02 (7th Cir. 1982) ("[A] state created procedural right is not itself a liberty interest.... States may decide to engage in such proceedings, but the due process clause does not compel them to do so because no constitutionally cognizable substantive interest of the prisoner is at stake."); Hayes v. Muller, No. 96-3420, 1996 WL 583180, *7 (E.D. Pa. Oct. 10, 1996) ("[A] state does not violate an individual's federal constitutional right to procedural due process merely by deviating from its own established procedures."); Rowe v. Fauver, 533 F.Supp. 1239, 1246 n.10 (D.N.J. 1982)("a failure by state officials to follow state procedural regulations not independently required by the Constitution fails to state a claim under the Due Process Clause."). Thus, violations of state statutes or rules or regulations that require certain procedures, which are not compelled by the Federal Constitution because there is no liberty interest that those state mandated procedures protect, do not make out a claim under Section 1983 and the proper remedy, if any, is in state court, seeking to have the state statutes enforced. Accordingly, this claim fails to state a claim upon which relief can be granted.

The Court turns next to Plaintiff's putative substantive due process claim. Essentially, Plaintiff's argument boils down to the claim that the Defendants' sanctioning him with seventy five days of disciplinary custody when he was actually innocent of the disciplinary infraction violated substantive due process. Plaintiff explicitly argues that "Defendants['] conduct and the ensuing punishment violated plaintiff's constitutional rights as per VIII and XIV Amendments, U. S. Constitution which protects [sic] prisoners from arbitrary and lawless acts by prison officials." Dkt. [31] at 17. See also Dkt. [31] at 10 ("Defendant Wilson knowingly allows hearing examiner/defendant Cross to arbitrarily and capriciously deny prisoners there [sic] request for witnesses during disciplinary proceedings. Thereby creating a protected due process violation."). Liberally construing Plaintiff's complaint in light of these arguments, we find that Plaintiff is making a substantive due process claim. See, e.g., Corn v. City of Lauderdale Lakes, 997 F.2d 1369, 1374 (11th Cir. 1993) ("The reason a substantive due process claim is also called an 'arbitrary and capricious due process claim' is because a showing that the government has acted arbitrarily and capriciously is a prerequisite for such a claim.").

As has been observed, substantive due process essentially affords protection against government actors taking actions for arbitrary or capricious reasons, which is what Plaintiff claims happened herein. See, e.g., County Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 165 (3d Cir. 2006) ("To prevail on a substantive due process claim, a plaintiff must demonstrate that an arbitrary and capricious act deprived them of a protected property interest"); Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 595 (3d Cir. 1998)("the deliberate and arbitrary abuse of government power violates an individual's right to substantive due process."); San Filippo v. Bongiovanni, 961 F.2d 1125, 1139 (3d Cir. 1992)("deliberate and

arbitrary abuse of government power violates substantive due process").  Plaintiff implies, if not

outright states, that it is arbitrary and capricious to find him guilty of the disciplinary infraction

when he is in fact innocent.

Plaintiff is simply wrong.  Substantive due process "is an area of the law famous for its

controversy, and not known for its simplicity."  Woodwind Estates Ltd. v. Gretkowski, 205 F.3d

118, 122 (3d Cir. 2000), abrogation on other grounds recognized by, United Artists Theatre

Circuit, Inc. v. Township of Warrington, PA, 316 F.3d 392 (3d Cir. 2003).  In contrast to

procedural due process' focus on procedures, substantive due process prohibits certain

government actions irrespective of the procedures which attend those actions.  Boyanowski v.

Capital Area Intermediate Unit, 215 F.3d 396, 399 (3d Cir. 2000) ("The substantive component

of the Due Process Clause limits what governments may do regardless of the fairness of

procedures that it employs, and covers government conduct in both legislative and executive

capacities."), abrogated on other grounds as recognized in, United Artists Theatre Circuit, Inc. v.

Township of Warrington, PA, 316 F.3d 392 (3d Cir. 2003).  Whereas procedural due process

concerns deprivations of liberty interests and assures that such deprivations are not accomplished

unless attended by certain procedures, substantive due process does not require a liberty interest

in order to be violated.  Block v. Potter, 631 F.2d 233, 236 (3d Cir. 1980)(holding that denial of

parole based on race may state a claim for violation of substantive due process even though there

is no liberty interest in parole);[1]  Pittsley v. Warish, 927 F.2d 3, 6 (1st Cir. 1991)(under one theory

---

[1]  This court acknowledges that even though "the vitality of Block is questionable, it must be followed until overturned.  See Jubilee v. Horn, No. 97-1755, slip op. at 1 (3d Cir. Mar. 26, 1998) (unpublished per curiam decision) ('[N]ot only do courts of appeals in other circuits disagree with Block, but more recent decisions by this Court suggest that Block may be obsolete.')."  Rauso v. Vaughn, No. Civ. 98-6312, 1999 WL 111474, *1 (E.D. Pa. March 2, 1999).

of substantive due process "it is not required that the plaintiffs prove a violation of a specific liberty or property interest") (citing, Rochin v. California, 342 U.S. 165 at 172, 173 (1952)).

The standards for analyzing a substantive due process claim appears to depend upon whether one is challenging legislative or executive action. See, e.g., Wagner ex rel. Wagner-Garay v. Fort Wayne Community Schools, 255 F.Supp.2d 915, 922 (N.D. Ind. 2003) ("However, the appropriate standard for analyzing a substantive due process claim depends on whether 'legislation or a specific act of a governmental officer is at issue.'")(quoting, Dunn v. Fairfield Community High School Dist. # 225, 158 F.3d 962, 965 (7th Cir. 1998)). The Pennsylvania Department of Corrections is an executive branch agency. The standard of review for a substantive due process challenge to executive branch action requires that the aggrieved person establish that the executive action shocks the court's conscience. See, e.g., Hunterson v. DiSabato, 308 F.3d 236, 247 n. 10 (3d Cir. 2002) (wherein the Court of Appeals observed that "we have frequently employed the 'shocks the conscience' standard when considering a claim that an executive action amounted to a substantive due process violation.").

Plaintiff raised before the PRC and Superintendent Wilson and the Chief Hearing Examiner the very same complaints about falsely being accused and being actually innocent and not having his witness at the hearing, Dkt. Nos. [4-4 ] to [4-6], that he raises herein. Hence, the Defendants had before them Plaintiff's contentions as to the alleged errors in finding him to be guilty of a disciplinary infraction of which he claimed actual innocence. Accordingly, the Defendants could determine for themselves whether Plaintiff was in fact guilty in view of his claim of actual innocence and they could decide what weight, if any, to give the evidence of his guilt and the evidence of his innocence, even considering the purported acceptance of

responsibility by Plaintiff's cellmate. Given that the PRC and Defendant Wilson and others decided to uphold the disciplinary sanction and maintain Plaintiff in disciplinary confinement, they apparently determined that the evidence against Plaintiff was true and Plaintiff's denials were not. Such determinations are completely within the Defendants' discretion and should not be overturned even if this court were to find to the contrary, i.e., that Plaintiff was not guilty of the disciplinary infraction, because the Defendants are entitled to make their own factual determinations and disagreements between, on the one hand, the Defendants' assessment of the evidence concerning Plaintiff's guilt and their assessment of his denials of involvement and, on the other hand, this court's or even a jury's assessment of the evidence supporting his guilt and Plaintiff's denials, are not a basis for finding a violation of Plaintiff's constitutional right to substantive due process. In other words, for purposes of deciding whether Plaintiff was guilty of the disciplinary infraction, Plaintiff is guilty, unless and until the Defendants determine him not to be, and, even if the Defendants were erroneous in determining that he was guilty, such an error does not constitute a substantive due process violation. Bishop v. Wood, 426 U.S. 341, 350 (1976)("The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect . . . decisions"), overruling on other grounds as recognized in, Whims v. Harbaugh, 139 F.3d 897 (4th Cir. 1998) (Table, Text in Westlaw); Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994) (applying rule of Bishop v. Wood in a prisoner case); Palmigiano v. Mullen, 491 F.2d 978, 980 (1st Cir. 1974)("There is no federally-protected right to a particular classification nor even to an error-free decision by the state authorities. ''The Constitution does not assure uniformity of decisions or immunity from merely erroneous action, whether by the courts or the executive agencies of a state.'")(quoting Snowden v. Hughes, 321 U.S. 1, 15 (1944) (Frankfurter,

J., concurring)); <u>Tansy v. Mondragon</u>, 52 F.3d 338 (Table), 1995 WL 216926, *5 (10th Cir. 1995) ("Even assuming that some of the allegations against Mr. Tansy were inaccurate, this does not establish a factual dispute as to whether he was deprived of substantive due process.") . That the Defendants committed a factual error in the course of determining whether Plaintiff was guilty of the disciplinary infraction and, therefore, worthy of placement in Disciplinary Custody, (assuming that they did do so erroneously) simply does not shock this court's conscience. That this is the case should not be surprising. If it does not offend the constitution that an innocent person is convicted of a crime, and made to suffer imprisonment as a consequence thereof, and, the Supreme Court has determined that it does not so offend,[2] then *a fortiori*, that a convicted prisoner is "mistakenly" found guilty of a disciplinary infraction and made to suffer a greater loss of privileges in comparison to those in the general population, does not, merely because the determination is mistaken, violate the constitution.

The court next turns to Plaintiff's equal protection claim. The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. In order "[t]o state an equal protection claim, plaintiff must show that: (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." <u>Sabatini v. Reinstein</u>, No. 99-2393, 1999 WL 636667, at 4-5 (E.D. Pa. Aug. 20, 1999).

---

[2] <u>See</u> <u>Herrera v. Collins</u>, 506 U.S. 390, 400 (1993)("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief."). <u>See</u> <u>also</u> <u>id</u>. at 404 ("a claim of 'actual innocence' is not itself a constitutional claim").

See also Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995). Essentially, to demonstrate an equal protection violation, an inmate has the burden of showing under the second prong the existence of purposeful discrimination. Hernandez v. New York, 500 U.S. 352 (1991); McCleskey v. Kemp, 481 U.S. 279, 292 (1987).

Here, Plaintiff's allegation that his Equal Protection rights were violated fails for a number of reasons. First, he utterly fails to allege that he was in fact treated differently from others when the Hearing Examiner denied his request for a witness, because he in fact alleges that she routinely denies prisoners their witnesses and even attached affidavits from other prisoners that she denied them their requested witnesses in their disciplinary hearings. See, e.g. Dkt. [31] at 10 ("Inmates being denied witnesses under the false pretense of 'being not needed to establish guilt' is a regular procedure within S.C.I. Fayette by the defendant Kerri Cross. . . ."); Dkt. [31-9] at 1 to 3 (affidavits of prisoners). Second, the complaint is utterly devoid of any factual allegations that the Hearing Examiner's alleged routine denial of prisoners' requests for witnesses any way implicates the concerns of the equal protection clause. Thus, the court finds that the complaint fails to state a claim of an equal protection violation.[3]

Lastly, in a conclusory fashion Plaintiff alleges a conspiracy amongst some, if not all, of the defendants. Conclusory allegations of conspiracy are insufficient to state a claim upon which

---

[3] Plaintiff also invokes the Fifth Amendment clause without elaboration. Dkt. [4] at 5 to 6, ¶¶ 1 to 6. Plaintiff has no Fifth Amendment claim because the Fifth Amendment applies solely to federal government actors, not state government actors and all defendants herein are state actors, and hence all Fifth Amendment claims are properly dismissed. Fallbrook Irrigation Dist. v. Bradley, 164 U.S. 112, 158 (1896)("The fifth amendment, which provides, among other things, that such property shall not be taken for public use without just compensation, applies only to the federal government, as has many times been decided."); Riley v. Camp, 130 F.3d 958, 972 n.19 (11th Cir. 1997)("The Fifth Amendment obviously does not apply here--the acts complained of were committed by state rather than federal officials.").

relief can be granted.  See e.g.,  Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989)("[t]he

allegations [of conspiracy] must be sufficient to 'describe the general composition of the

conspiracy, some or all of its broad objectives, and the defendant's general role in that

conspiracy.'").  The operative complaint fails to comply with Rose v. Bartle's requirements.  Nor

does this requirement that allegations of conspiracy be more than conclusory run afoul of the

generous pleading standard under Fed.R.Civ.P. 8(a) as construed in Leatherman v. Tarrant Cty.

Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993). See, e.g., Loftus v. SEPTA,

843 F.Supp. 981, 988 (E.D. Pa. 1994) ("Requiring that a complaint alleging conspiracy flesh out

in some detail the nature of the scheme does not run afoul of the admonition in Leatherman ....

Rather, in the context of a conspiracy, the 'short and plain statement' provision of Rule 8 is

satisfied only if the defendant is provided with the degree of particularity that animates the fair

notice requirement of the rule.").  Hence, because the conspiracy claim is conclusory, it should be

dismissed as against all of the Defendants.

  Alternatively, because we have found no substantive violation of Plaintiff's rights, the

mere existence of a conspiracy (assuming there was such) cannot serve to state a claim upon

which relief can be granted.  As explained by the Court of Appeals: "[i]n order to prevail on a

conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law

conspired to deprive him of a **federally protected** right."  Ridgewood Bd. of Educ. v. N.E. ex

rel. M.E., 172 F.3d 238, 254 (3d Cir. 1999(emphasis added).  Accord Eskridge v. Hawkins,

Civ.A. No. 05-2352, 2006 WL 2303014, at *7 (E.D.Pa. 2006)("To establish a conspiracy claim

under § 1983 , 'a plaintiff must prove that persons acting under the color of state law conspired

to deprive him of a federally protected right .").  A conspiracy to violate state rights of an

individual is insufficient to state a Section 1983 claim.

The rule is that absent a showing of an underlying violation of a federal right, no cause of action for conspiracy under Section 1983 can be established. As succinctly explained by one Court:

> "Provided that there is an underlying constitutional deprivation, the conspiracy claim allows for imputed liability; a plaintiff may be able to impose liability on one defendant for the actions of another performed in the course of the conspiracy." <u>Dixon</u> 898 F.2d at 1449 n. 6. . . .

> "'Section 1983 does not, however, punish conspiracy; an actual denial of a civil right is necessary before a cause of action arises....' " <u>Andree</u>, 818 F.2d at 1311 (<u>quoting</u> <u>Goldschmidt v. Patchett</u>, 686 F.2d 582, 585 (7th Cir. 1982)) . . . .

> "While the existence of a conspiracy otherwise may supply the element of state action and expand the scope of liability through the concept of imputation, § 1983 does not provide a cause of action per se for conspiracy to deprive one of a constitutional right. Without an actual deprivation, there can be no liability under § 1983." <u>Defeo</u>, 810 F.Supp. at 658;. . . .

> "A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but 'a conspiracy claim is not actionable without an actual violation of section 1983.' " <u>Hale v. Townley</u>, 45 F.3d 914, 920 (5th Cir.1995) (citation omitted). . . . This is because the "gist of the cause of action is the deprivation and not the conspiracy." <u>Lesser v. Braniff Airways, Inc.</u>, 518 F.2d

538, 540 n. 2 (7th Cir. 1975). . . .

Holt Cargo Systems, Inc. v. Delaware River Port Authority, 20 F.Supp.2d 803, 843 (E.D.Pa. 1998), aff'd, 165 F.3d 242 (3d Cir. 1999).

Here, because we have already determined that the Plaintiff has failed to establish the violation of any of his federal rights, he cannot, *a fortiori*, establish a civil conspiracy under Section 1983 because such requires the commission of an underlying federal civil rights violation, which Plaintiff has failed to establish.  In re Orthopedic Bone Screw Products Liability Litigation, 193 F.3d 781, 789 (3d Cir. 1999)("The established rule is that a cause of action for civil conspiracy requires a separate underlying tort as a predicate for liability. Thus, one cannot sue a group of defendants for conspiring to engage in conduct that would not be actionable against an individual defendant. Instead, actionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor. Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort.  Conspiracy is not actionable without commission of some wrong giving rise to a cause of action independent of the conspiracy. No action in tort lies for conspiracy to do something unless the acts actually done, if done by one person, would constitute a tort.")(internal citations and quotations omitted); Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983) ("Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy [i.e., the agreement] is not independently actionable") . Hence, the conspiracy claim is properly dismissed for failure to state a claim upon which relief can e granted.

Accordingly, because the Defendants are entitled to dismissal of all of the claims raised by Plaintiff, the complaint is properly dismissed for failure to state a claim upon which relief can be granted and the case will be closed. An appropriate Order follows.

/s/ *Amy Reynolds Hay*

United States Magistrate Judge

12 March, 2009

cc:     Bryant Davis

        CU-6369

        SCI Fayette

        P.O. Box 9999

        LaBelle, PA 15450-0999

        All Counsel of Record via CM-ECF

BRYANT DAVIS,                )

                                )

            Plaintiff        )

                                )

      vs.                   )    Civil Action No. 08-589

                                )    Magistrate Judge Amy Reynolds Hay

HARRY WILSON, Superintendent;    )

KERRI CROSS, Hearing Examiner;    )

TAMMY CESARINO-MARTIN;       )

MICHEAL HOWARD, Inmate Employment;  )

PAUL YETTER, Unit Manager; CARL    )

WALKER, Unit Manager; SGT PIERCE,  )

C.O. II; LT. NOSE, C.O. III; ZAMPATTI,  )

C.O. I; JAMES RISBIN, C.O. 1; and    )

TIMOTHY I. MARK, Chief Hearing Examiner, )

                                )

          Defendants     )    RE:  Dkt [21]

## **ORDER**

AND NOW, this 12th day of March, 2009, for the reasons set forth in the accompanying Memorandum Opinion, IT IS HEREBY ORDERED that the Defendants' Motion to Dismiss is GRANTED and the Clerk shall mark the case Closed.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, any appeal from this Order must be taken within thirty (30) days by filing a notice of appeal as provided in Rule 3 of the Federal Rules of Appellate Procedure.

/s/ *Amy Reynolds Hay*
_____United States Magistrate Judge

cc:     Bryant Davis

        CU-6369

        SCI Fayette

        P.O. Box 9999

        LaBelle, PA 15450-0999


        All Counsel of Record via CM-ECF